NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

ARINA TARASKA, *Petitioner/Appellee,*

*v.*

MICHAEL TARASKA, *Respondent/Appellant.*

No. 1 CA-CV 18-0611 FC

FILED: 10-8-2019

Appeal from the Superior Court in Maricopa County
No. FC2016-008369
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arina Taraska, Surprise
*Petitioner/Appellee*

Michael Taraska, Phoenix
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer B. Campbell joined.

---

**C R U Z**, Judge:

¶1 This case involves a post-divorce dispute between Michael Taraska ("Father") and Arina Taraska ("Mother") over legal decision-making authority and parenting time for their child, R.T., born in July 2013. For the following reasons, we affirm the superior court's orders awarding Mother sole decision making and modifying Father's parenting time.

## FACTS AND PROCEDURAL HISTORY

¶2 Father and Mother divorced in March 2017. The superior court awarded Father and Mother joint legal decision-making authority and ordered an equal parenting time schedule, commonly referred to as a 5-2-2-5 plan, where both parents had parenting time for the same number of weekdays and weekends on an alternating basis.

¶3 The parties continued to dispute legal decision-making authority and parenting time, and in June 2017, the superior court appointed a parenting coordinator ("PC") pursuant to Arizona Rules of Family Law Procedure ("ARFLP") 74. In August 2017, the PC submitted a report to the superior court containing recommendations that the court adopted. The superior court ultimately dismissed the PC in September 2017 after finding that the PC process was unlikely to resolve future disputes.

¶4 In October 2017, the superior court denied petitions to modify from both Father and Mother, but the court ordered that Father and Mother could communicate with R.T. by telephone, Facetime, or Skype on the days R.T. was with the other parent.

¶5 In June 2018, Mother filed an emergency petition to modify legal decision-making authority and parenting time. Mother claimed that emergency circumstances justified a change in custody because Father failed to facilitate R.T.'s calls to Mother while R.T. was with Father and because Father communicated with R.T. inappropriately during calls. In her emergency petition Mother requested the court "[c]onsider changes . . . since joint legal decision is not possible in this situation." In a cross petition,

Father asked the court to allow him to purchase a cell phone for R.T., to alter the location for pick up and drop off, and to enforce the mediation term of the consent decree. The court determined that no emergency existed, but ordered an evidentiary hearing on Mother's petition.

**¶6** At the August 21, 2018 evidentiary hearing, Mother and Father each testified and offered evidence. Mother called one witness, but the court struck the witness' testimony after the witness invoked her Fifth Amendment right not to testify during Father's cross-examination. Father and Mother stipulated to the admission of each other's evidence.

**¶7** Following the evidentiary hearing, Father moved to strike all evidence presented by Mother. The court denied the motion.

**¶8** In September 2018, the court issued its findings regarding Arizona Revised Statutes ("A.R.S.") section 25-403(A) factors, awarded sole legal decision-making authority to Mother, and vacated the prior order allowing daily calls with R.T. The court found that "Father is emotionally abusing this child and [showed] no insight into his behavior or intention of changing his behavior" and ordered supervised parenting time for Father "to protect the child's physical, mental, moral, or emotional health." Regarding Father's cross petition, the court declined to decide the issue of a cell phone for R.T., leaving it to Mother as the sole legal decision maker over the child. Finally, the court denied Father's request for mediation.

**¶9** Father timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.      Notice of Scope of Evidentiary Hearing

**¶10** Father argues the superior court denied him due process when it modified court orders on legal decision-making authority and parenting time without notice and when it revoked the order requiring daily calls with R.T. He argues that Mother's petition did not contain adequate notice that modification of legal decision-making authority and parenting time would be at issue and that he was "blind-sided" by the court's order.

**¶11** "Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Huck v. Haralambie*, 122 Ariz. 63, 65 (1979). Due process claims are issues of law, which we review *de novo*. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999).

**¶12**        A petition must include a statement showing the petitioner is entitled to relief and a demand for the relief sought.  Ariz. R. Fam. Law P. 24(a).[1]  Here, neither party was represented by counsel, but self-represented litigants are held to the same standard as a lawyer regarding notice of statute, rules, and legal principles. *Higgins v. Higgins*, 194 Ariz. 266, 270, ¶ 12 (App. 1999).

**¶13**        At the July 2018 hearing, the court stated that if Mother "proves the allegations in the petition," she could file a motion to "modify joint legal decision making to sole."  From this statement Father concludes that it was clear to the parties that the issue of legal decision-making authority was not to be litigated at the upcoming evidentiary hearing, and a new petition was required before the court could entertain Mother's request for change of legal decision-making authority.  Father's argument fails, however, because Mother's petition clearly requested modification of legal decision-making authority.

**¶14**        Mother's petition cited the superior court's order of October 5, 2017, which stated that "[i]f the parties continue to communicate in inappropriate manners [to R.T. regarding the other parent], the [c]ourt will not hesitate to change legal decision making or to suspend one parent's parenting time."  Mother also explained the negative effects of Father's conduct on the child, including his "fears of losing physical contact with Mother," and "not letting [go of] Mother's hand during the separation," or that the child should "not be aware of details of litigation Father exposes him to."  Under "Prayer [f]or Relief" Mother requested, among other things, the court "[c]onsider changes in [l]egal decision [sic] since joint [l]egal decision [sic] is not possible in this situation" and "[c]onsider custodial re-evaluation."  When read together, Mother's petition provided adequate notice to Father that her plea to the court was to address legal decision making and parenting time in addition to ending the daily calls with R.T.

**¶15**        Father's response to the petition and his separate pre-hearing statement bely his claim of lack of notice as to the legal decision-making and parenting-time issues.  In his response to Mother's petition, Father acknowledged that Mother sought modifications to legal decision-making authority and parenting time, opposing the requests as "not available as a

---

[1]        Mother filed her petition under ARFLP 29(A).  The ARFLP were revised effective January 1, 2019, and 29(A) was renumbered as 24(a) with no substantive differences. *See* ARFLP, Correlation Table.  For ease of reference, we refer to 24(a) throughout this decision.

remedy." Also, in his separate pre-hearing statement, Father attempted to narrow the issues to be heard by the court at the upcoming hearing and requested a separate hearing to address modification of parenting time and legal decision-making authority.[2] More importantly, during the evidentiary hearing itself the court referred to Mother's petition and asked whether Mother was "asking for sole, legal decision-making" and "[w]hat parenting plan would [Mother] want the court to put in place." Father was present, but did not object to the court's questions or to Mother's request for sole legal decision-making authority. Accordingly, we reject Father's argument that he lacked notice of Mother's requests.

¶16        Father cites *Cruz v. Garcia*, 240 Ariz. 233, 237, ¶ 16 (App. 2016), to argue he had no opportunity "to be heard at a meaningful time in a meaningful manner" before the court modified legal decision-making authority and parenting time. *Cruz* is distinguishable from this case. In *Cruz*, the court had previously set a separate hearing to address legal decision-making authority. *Id.* at ¶ 15. "The court reiterated twice at the hearing that the motion before it was [father's] petition to suspend [mother's] parenting time" rather than the other then-pending motions. *Id.* The court then heard evidence and adjudicated the issues of legal decision making and parenting time. *Id.* at ¶ 17.

¶17        Unlike *Cruz*, here the court had one pending motion regarding R.T.: Mother's emergency petition to change the court's orders. At the evidentiary hearing, the court addressed Mother's requests for modification to legal decision making and parenting time. Father then testified, responded to Mother's evidence, and presented evidence. In contrast to *Cruz*, the court made factual findings based on the evidence admitted at the evidentiary hearing, including testimony from both parties and all of the exhibits admitted per stipulation of the parties.

¶18        In his reply brief, Father argues, for the first time, that Mother's petition "was jurisdictionally defective" under A.R.S. § 25-411. However, Father's challenge is untimely. "The time for achieving [§ 25-411]'s intended [procedural] protections . . . has passed if noncompliance is first brought to our attention on appeal from the final judgment." *In re the Marriage of Dorman*, 198 Ariz. 298, 302, ¶ 11 (App. 2000). The superior court conducted an evidentiary hearing, reviewed the merits of Mother's petition, and determined there was sufficient cause to modify the legal decision-making and parenting-time orders. Therefore, Father's objection under

---

2        The court implicitly denied that request in considering Mother's petition at the evidentiary hearing as scheduled.

A.R.S. § 25-411 is now waived and the court's orders will not be disturbed on this basis.

**¶19**        Father had notice that the superior court would consider modifications to legal decision-making authority and parenting time at the evidentiary hearing, and he had the opportunity to be heard and to present evidence at the evidentiary hearing.  As such, the superior court did not deny Father due process in modifying court orders for legal decision-making authority or parenting time.

II.        Admission of Video Evidence

**¶20**        Father argues that the superior court erred in admitting video evidence presented by Mother because he did not have an opportunity to cross-examine Mother's witness regarding the evidence.  We will not disturb a superior court's ruling on the admissibility of evidence absent a clear abuse of discretion and resulting prejudice.  *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 24 (App. 2004) (citation omitted).  To determine that there has been an abuse of discretion, "the record must be devoid of competent evidence to support the decision of the trial court."  *Borg v. Borg*, 3 Ariz. App. 274, 277 (1966) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)).

**¶21**        Father invoked the Arizona Rules of Evidence under ARFLP 2(a) for the evidentiary hearing.  Mother presented video evidence and called family friend Ms. Robbins as a witness to lay a foundation for that evidence.  Father stipulated to the admission of all of Mother's evidence in exchange for Mother's stipulation to the admission of all of his evidence; Mother agreed and the court admitted all exhibits from both parties.

**¶22**        The stipulation of evidence generally waives a party's right to object to the evidence on appeal.  *See State v. Rockwell*, 161 Ariz. 5, 10 (1989); *cf. Gustafson v. Riggs*, 10 Ariz. App. 74, 76 (1969) ("The stipulation of evidence into the record . . . waives any error arising from the introduction of the evidence itself.").  Father claims he stipulated to "some but not all" of Mother's evidence "on the basis and understanding" that he would have an opportunity to cross-examine Mother's witness.  But the transcript does not support Father's assertion: Father made no mention of cross-examining Mother's witness when stipulating to admitting both parties' evidence.

**¶23**        The evidence that Father challenges entered the record via stipulation.  Therefore, the video evidence to which Father now objects was not admitted as a result of Ms. Robbins' testimony, but rather through stipulation.  Moreover, Father's stipulation to the admission of Mother's exhibits was made in exchange for the benefit of the admission of all of his

own exhibits. Once admitted, the court was not obligated to grant Father's request that the exhibits be withdrawn from evidence. We find no abuse of discretion in the court's admission of the video evidence or in its subsequent denial of the motion to strike the same.

**¶24** In addition, we will not disturb the court's admission of evidence absent "*both* a clear abuse of discretion and resulting prejudice." *Fuentes*, 209 Ariz. at 57, ¶ 27 (emphasis added). Prejudice will not be presumed but must "affirmatively appear from the record." *Rimondi v. Briggs*, 124 Ariz. 561, 565 (1980); *see Borg*, 3 Ariz. App. at 277. A complete review of the record reveals sufficient competent evidence to sustain the court's judgment even without the evidence challenged by Father as inadmissible. Therefore, the court's admission of the video evidence did not result in prejudice to Father. *See Groener v. Briehl*, 135 Ariz. 395, 398 (App. 1983).

III.     Parenting Coordinator's Recommendation

**¶25** Father also argues, for the first time on appeal and without citing to any legal authority, that the superior court lacked jurisdiction to hold an evidentiary hearing to modify legal decision-making authority and parenting time because the court failed to comply with a prior court order that was the "law of the case." He cites to the 2017 PC report recommending the court order "a psychological evaluation of each parent, prior to considering any petitions for modification."

**¶26** The "law of the case" is

> a rule of general application that the decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested, and, according to some authorities, provided the decision is on the merits.

*State v. King*, 180 Ariz. 268, 278 (1994) (quoting *In re Monaghan's Estate*, 71 Ariz. 334, 336 (1951)). The issue of the 2017 PC report recommendations was not previously litigated on appeal and no decision rendered such that the superior court and parties were bound to follow it in all subsequent proceedings. Furthermore, a family's changing circumstances may in fact require that the superior court modify its prior orders. The prior order

adopting the PC report and recommendations did not bar the superior court from considering Mother's petition and conducting the evidentiary hearing. *See King*, 180 Ariz. at 278-79; *Zimmerman v. Shakman*, 204 Ariz. 231, 236, ¶ 15 (App. 2003). Thus, the "law of the case" doctrine did not deprive the court of jurisdiction to consider Mother's petition.

**¶27** Finally, Father alleges the superior court was biased against him. In reviewing this type of claim against a judicial officer, we presume judges to be "free of bias and prejudice." *State v. Rossi*, 154 Ariz. 245, 247 (1987). A review of the record shows no indication that the judge was partial or prejudiced against Father. Accordingly, Father has failed to prove error on this basis.

## CONCLUSION

**¶28** For the foregoing reasons, we affirm the court's orders.



AMY M. WOOD • Clerk of the Court
FILED:
RB